We will hope to hear argument in number 21-1695, Gorge Design against Meaning Xuansheng. Oh yes, please come forward. Okay, Mr. Oliver, please begin. Thank you, Your Honor. And like Your Honor, I don't know the knit pronunciation of the second party, but my client is appellant neomagic. May it please the Court, though the dollar value of this individual case is not high, this case presents an excellent opportunity for the Federal Circuit to meaningfully weigh in on a problematic and proliferating form of abusive litigation. Professor Uptight Toler's amicus brief here highlights a due process problem and confirms that due process through notice and hearing has historically been and should still be provided before depriving a party of property. That due process does not occur in this type of cases. Professor Goldman's forthcoming article. I would just say for me it's a little hard to think of this as a type of case, so I'm trying to think about what happened here. What happened here was the presentation of a handful or half a dozen or something of causes of action through a very quick TRO process. The whole thing from beginning to end is three weeks. At least maybe two of the causes of action on their face are superficially plausible. Namely, the unfair competition ones, including trade dress. Forget about the patent claim. It wasn't, in fact, a presented copyright claim. And there was a voluntary withdrawal basically as soon as you guys had conversation in which you provided both an assertion and then with maybe a little bit of follow-up discovery. That's not entirely clear to me. They're not obliged to take your word for it. But they quickly decided you weren't selling enough, so suit gone voluntarily. That's not a particularly, I don't know, poster child case for abuse. Your Honor, if I may, I would like to address each of the causes of action. I would like to also point, direct, Your Honor, specifically to Professor Goldman's forthcoming article, which we submitted as supplemental authority at docket number 72-2. All right, but at least I don't feel I'm in the position to look at a law review article and decide facts on the basis of that law review article. We have facts in the sense that we have all of this on essentially pleading, but something very similar to pleading. And that's all we have. Correct. We're not at all asking you to address the facts based on the law review article. The law review article highlights how this form of litigation, this kind of robo-pleading has become a problem in the courts and has grown. Regarding the patent claim, the patent claim was facially deficient. Right, I wanted to put that aside. The other side clearly has a problem with two threads versus one thread. Put that aside. There's no independent harm from that if there is at least one non-bad faith plausible claim here. And the ones that at least are in my mind are the unfair competitions ones, whether federal or state common law. So the harm that came here, the harm that was presented here is the plaintiff got an order from the court allowing them to seize all of the plaintiff's assets and to prohibit the defendant, my client, from transferring any assets as well as to shut down their website. Now they chose not to shut down the website, but the order allowed that. They seized $300,000 without notice. By seized you meant this was money in the hands of, I don't know, Amazon or PayPal or somebody. I believe it was PayPal. It didn't go to them. Correct. So on October 6th when the voluntary dismissal occurred, that money was back in your possession. That is true. That is true. They did have to notify PayPal after that. But they took hold of or froze $300,000 that my client could not use to pay any of its obligations. Does that violate a rule like Rule 65 or something governing temporary restraining orders or not? Well, here Rule 65 does require that the plaintiff either give notice to the defendant of the motion for temporary restraining order or show the court that they attempted to give notice to the defendant, and that was not done here. They did not attempt to give notice. In fact, they obtained an order from the court saying you don't have to ever give notice until after you've seized assets. So plausibly, they could have gone through the preliminary injunction hearing under this order without ever giving notice. What they did, I mean, we held last winter in that pair of ABC cases involving a similar procedure to go after online sellers that at least for the preliminary injunction stage, the notice requirement doesn't allow, is a real restriction. But that wasn't a TRO case. As far as I know, I'm not familiar with all the facts of the ABC cases. I have read them. Yes, sometimes with that case, even after you've read it, it might be hard to be familiar with all the facts. But in this case, again, there's no showing with respect to any of the other defendants that notice was given of the preliminary injunction hearing. Here, notice was given on September 29th for the first time to my client for a hearing that was on October 2nd. My client was faced at that time. But for purposes of the preliminary injunction, that's a moot point to you. They dropped you out of the case before there was a thing. They agreed to do it the morning of the preliminary injunction hearing. So how can you complain of that? Well, first, it forced the burden on my client to have to respond within two days to do an immense amount of research briefing, having attorneys work 20 hours a day to respond to the numerous allegations, to prepare the papers, to make the emergency filing with the court. We filed a Rule 12 motion with numerous grounds, after which the plaintiff responded and said, Well, still, if you pay us $9,500, we will release your $300,000. We again responded that the case was frivolous, filed a second motion to dissolve many of the orders and attempting to have the preliminary injunction lifted. They then dismissed us hours before the hearing. But the reason that even the dismissal was abusive here was we pointed out that two-thirds of the defendants could not have used the trademark based on the evidence and the pleadings. We pointed out that none of the defendants could have used the patent. And we pointed out that the copyright claim, which was stated in the complaint, in the motion for temporary restraining order, and in an email to my client, their first notice of the case, three places they point out that we infringed a federally registered copyright that was nonexistent. They then went to the preliminary injunction hearing. The email you're referring to is the September 29th one from Gorge? From Gorge's attorneys. Not the September 23rd email from PayPal, which put you on notice of the TRO within 36 hours. PayPal sent an email saying your money was seized. And they identified the case and they identified the plaintiff's lawyer, who you could have contacted, right? They gave an incorrect email address that my client attempted to contact and got a bounce back from. The name of the outfit, I mean, it could have taken about five seconds to find it online. The name that they gave for the case was Orange Screw, which is not a name of a- The name of the plaintiff's representative, which PayPal's email said. Plaintiff's representative is the same name as we have in front of us, Ference. Right? That really takes five seconds to find. My client attempted to contact them and got a bounce back email because the email address provided was incorrect. My client contacted me with the case name, or not the case name, the case number, which we looked up. It was a sealed case. I called the court to try and find out what the case was, and they said, we can't tell you because it's a sealed case. I don't believe that the attorney's name was listed. I don't have the document sitting in front of me. Ference and Associates, LLC, Appendix 786. Okay. That was something, Your Honor, that my clients, unsophisticated in legal matters as they may be, did not notice or was not able to track down. When they contacted me with the email on the 29th, we were able to then download the documents. What are your best legal arguments for reversible error in a precise way? This is a terrible thing, and it's got to be stopped systemically. Sure, Your Honor. First, the district court did not follow the appropriate standards and procedures for assessing whether the claims were legitimate or frivolous claims. The Third Circuit law says if you don't follow the right, if you don't apply the right legal or factual criteria, the district court is not entitled to the deference that would otherwise be entitled. Where the district court compares product to product rather than product to patent claims, that's a problem. Where the district court looks at the color and the shape of the product rather than looking to see if any of the words in the word trademark are used, that's a problem. Where the district court looks at photos that don't even show the product in any meaningful manner and says that could be an un… I'm still confused what you're actually arguing was legal error and under which statutory provision you're entitled to attorney fees. Even if we agree with you that this is abusive litigation, what statute entitled you to attorney's fees? So, the 20… First, the court's inherent power does entitle us to attorney's fees. Second, 28 U.S.C. 1927 talks about vexatious litigation or litigation as conduct that multiplies proceedings. Here, the proceedings were multiplied significantly by filing the TRO, by filing under seal, by obtaining… Filing and obtaining an order for discovery that was very abusive and that was to be answered in 14 days and served by publication on a website for a U.S. client whose address and corporate information was clearly listed on their website. If a complaint had been filed, we would have had an opportunity to publicly see the complaint, to contact them, to deal with that through the normal process of either a Rule 12 motion or an answer without having to do an extraneous amount of briefing and research into both the facts and law on all of these other issues to file the motions before the preliminary injunction hearing. Why don't you reserve or restore the rebuttal time? Thank you. Thank you.  May it please the court? Reading Mr. Oliver's briefing and listening to his argument, I'm struck by how Neomagic refuses to recognize what this case is about. It's about a small family-owned company building a business off of one product and that business being threatened by Neomagic and others selling knockoffs of that product online. To put things in perspective, Gorge Design's very economic survival was being threatened by these knockoff sales. What are the causes of action that you think pass, muster as above frivolous? I think all of the causes of action do. How could the patent cause of action? Your patent requires at least two threads on the screw. Neither your product nor the one you accused of has two threads. We disagree with that claim interpretation, Your Honor. If you look at, I'm prepared to address that in my argument or I'll address it right now. What's your preference, Your Honor? Why don't you start how you can get to a plurality of threads and say that reads on one thread. Because if you look at the drawing in the patent, Your Honor, it shows the product that is sold by Gorge Design and also the product that was sold by Neomagic. And the threads that are shown, what is shown in the drawing is a continuous spiral and it's described as having multiple threads. For example, I refer you to column two of the patent. It appears at appendix page 019. It says, as seen in reference to figure two, the helical threads 32 are positioned approximately yada, yada, yada. It goes on. Further, threads 32 define. And wherever 32 is referenced in the specification, it's referred to as threads. Okay? Okay, go on. Okay. So after we brought this litigation and the listings for the 39 sellers in the litigation were removed from the Internet, sales of Gorge Design's product increased by 20%. One of Neomagic's main defense is that it only sold one knockoff product. Although we haven't had discovery, we know there are at least two sales. One is the test buy for the underlying litigation, and the second is the one purchased by a frustrated consumer who contacted Gorge Design to complain about the knockoff product that it received from Neomagic. Moreover, a rights owner doesn't know how many knockoffs a seller has sold until litigation has been commenced. Hey, can I ask you a question focusing on, I guess, the procedural matter of the TRO and the Rule 65 provisions governing when you can ask for and obtain a TRO without giving notice to those who would be covered by it? What did you tell the district court in seeking the TRO? Well, the reason this case was filed under seal and the defendant's PayPal accounts were frozen is that's typically what's done in cases like this, and there's nothing exceptional about how this case unfolded. This is a necessary process. It's not an abusive process. It's a defensive process. Brad, I guess I was asking a question about, is it Rule 65B1A, and did you give specific facts about why you didn't have to give notice or whatever the standard is? Yes, we did. That's what I meant. I'm sorry. I misunderstood the question. Yes, we gave specific facts, and the concern is that history has shown in these types of cases when defendants have notice, they move the funds out of the accounts, depriving the plaintiffs of a remedy, and they typically will open a new storefront under a different name, sometimes within days. When it came time for Neomagic to either oppose a preliminary injunction or seek fees, do you recall what did it say about the validity of the TRO in terms of compliance with Rule 65 or not? Did it make an argument that the TRO was improper because Rule 65 was not complied with in either filing? It made a filing opposing the PI? It made a filing opposing the PI. And obviously made a filing in support of its fees request. Correct. I don't believe they argued in the court below that the TRO was improper, but with regard to the notice, we gave PayPal the information regarding our contact information and the court order that was given on September 22nd. On September 23rd, PayPal sent out a notice to its customers that had a typo in our email address. We found out about that typo later on the 23rd when folks reached out to us through the general email address on our website. We set up another email account to receive emails sent to that typo address. We also requested PayPal send out another notification with the correct email address, and PayPal confirmed that they did that to us on the 25th, so two days after they sent out the email with their mistake in it. So if NeoMagic wasn't able to reach us, other defendants did, and the reason they couldn't reach us was a lack of effort on their part. Okay. Do you happen to know, has the Third Circuit specifically held that the kind of Rule 41 voluntary dismissal that you effectuated here is not one that entitles the other side to be a prevailing party? I believe the case law is pretty clear on that, Your Honor, including Federal Circuit cases. Right, but on that question, at least outside the Title 35 context, that would not be our law. That would be Third Circuit law. That is correct. There's at least one old pre, what is it, Buchanan? I don't remember the name. The Supreme Court case that came out in the early 2000s, there's a Third Circuit case about the counterpart language in Rule 54D, which is just costs, not attorneys' fees, but it's counterpart language that goes the other way, right? It's not ringing a bell for you, Your Honor. Okay. I mean, our research has shown that Rule 41 voluntary dismissal before an answer has been served does not entitle one to be a prevailing party. It is a dismissal without prejudice. Okay. You had referenced in Mr. Oliver's opening remarks the pair of ABC cases. I am familiar with the facts in those cases, and those cases did start off with a temporary restraining order and then a preliminary injunction. Right, but the litigation there was about, I mean, on appeal, the challenges were about the preliminary injunction, not about the TRO. That's correct. Okay. Most of Neomagic's arguments center around defenses it contends it has to our claims. I'll run through each of those claims and our responses to their defenses, but what Neomagic ignores are two critical themes that run through the district court's decision. First, Neomagic's arguments and briefs try to quietly skip past the fundamental nature of its conduct. Neomagic advertised and sold a product that is nearly if not completely identical in form and did so by using our photographs, including photographs actually taken by the principal of Gorge Design, Kirby Erderly. Neomagic doesn't even try and deny these facts. Thus, the essence of Neomagic's position is that it can make a knockoff imitation product, pirate our pictures to confuse consumers into believing they are buying our product, and that there should be no legal consequence for this behavior. And second, a motion for attorney's fees is not- I'm sorry, and they have various arguments about why, even though you might not think so, that that's actually a quite correct statement of the law. That is, you can't, I think you didn't, but you can't assert a copyright claim without having registration. That's correct. And you haven't identified that. Their view is that plurality on the patent claim means more than one, not whatever the spec might suggest about how each turn of a single screw is a separate thread, that there's no unfair competition based on at least 1145 or Title 15 or other aspects of the line of math without, just because the product looks the same and maybe even trade dress under the Supreme Court's case law, can't qualify just by, as you say, the form of the product. They have a series of- They have a series of arguments, and those are all arguments on the merits. The second theme in the district court's decision denying the motion for attorney's fees is the motion for attorney's fees is not the form to adjudicate their claims on the merits. Well, of course, not to adjudicate them on the merits in full, but if the standard is something like bad faith, then- Well, the district court- The merits are so apparently weak, that is actually part of the job, if you get past prevailing party and so on. Well, the district court did determine that Gorge Design had a legitimate purpose in bringing its case and whether Gorge Design would have prevailed, ultimately prevailed on its claim, isn't what was before the court, and it's not what's before this court. So after carefully evaluating the conduct of the parties, the district court found Gorge Design had not engaged in bad faith, vexatious, or wanton conduct. The district court didn't stop there. It added, perhaps Neomagic itself has approached or crossed that line in its zeal to obtain fees. Briefly, what Neomagic did is they used 15 photographs. Every single photograph they used on their listing was a photograph of Gorge Design. And the way people shop today is they go to Amazon, they go to a brick-and-mortar store, and then they look at the product, and then they try and find the product at a lesser price. So when you are using the photographs, what you're doing is creating market confusion. I have a few examples of the photographs that they used. This is a photograph of Buford the Dog, which is owned by the owner of the local coffee shop in Bingham, Washington, which is where Gorge Design is based. This is a montage of photographs which includes Suki the Dog, which is the dog owned by the mother of Kirby Erderly, the principal of Gorge Design. And the only purpose of using these dogs is to make consumers think it's the same product. When they see those dogs, they're thinking that it's the product, because the dog has no rational relationship to the product, and there's no possible reason to use the dog's image except to create market confusion. And there's a long line of 43A cases. So the district court did not abuse its discretion in denying Neomagic's motion for attorney's fees. Again, the district court wove through its decision two themes. All right, I think your time has run out, and it's beginning to sound repetitive to me. So I think I'd like to hear rebuttal from you. If I may state two more sentences? Okay, go ahead. Nothing highlights the district court's concern about Neomagic's conduct than the fact that Neomagic was dismissed from the case three days after its counsel was retained. Yet Neomagic believes it is entitled to an award of over $57,000 in attorney's fees. For these reasons, we respectfully request that this court affirm the district court's decision denying Neomagic's motion for attorney's fees. Thank you. Thank you, Your Honor. First, very briefly, I want to address two factual assertions made by counsel that are not part of the record and that are new to us today, an alleged second sale by a frustrated owner and an alleged second email from PayPal. Neither of those are in the record, and neither of those are here before us today. The news of the second email is completely shocking to me, as is the second sale, where my client offered a declaration saying that only one sale was made. What we're looking at here is a case where a company has a product that looks a certain way, and they don't want anybody to be able to compete in the market with them without a patent that covers it, without a copyright on their photographs, without a trademark that's even arguably used. Page 26 in our opening brief, we put in a diagram showing the photos that were used. You know you're just re-arguing the facts. We're here on an abuse of discretion standard, so re-arguing the facts is not going to do you any good. You have to explain how the facts are so disproportionately in your favor that the district court abused its discretion. Exactly. So, Your Honor, on page 27 and 28 of our opening brief, we point to the Supreme Court's statements about unfair competition, and the Supreme Court says, unless an intellectual property rights such as a patent or copyright protects an item, it's subject to copying. This is in the context of unfair competition, as was alleged here. The district court abused its discretion by not applying the legal standards here. The district court said, you sold a product that looks like theirs. You use their photos without any concern to what are the legal standards. Is the product patented? Is there an actual trademark? Are there copyrights on the photos? Is it an inferior product? There's no suggestion of any of that here. And the district court abused discretion by implying the improper standards. Well, it's abused its discretion to use its inherent authority. Isn't that what you're saying? Because you haven't made a strong argument that you have any statutory basis for attorney's fees. What I hear you saying, I mean, your brief actually asked us to invoke our inherent authority at the appellate level, I believe? No, Your Honor. That's what the appellee said that we said. Our brief actually said that we wanted you to reverse the district court by finding that the district court abused discretion and not applying its own inherent authority. The Third Circuit case law... And that its own inherent authority would depend on it agreeing with you that this was this nature of this litigation itself is abusive at its core. Not just the nature, but also the specific facts of the entire litigation. As we have pointed out in our reply brief at page 8, I believe, the Third Circuit says where the district court improperly applies or identifies the legal... For the district court to have abused its discretion in that respect, you'd have to point to a clear error in a fact finding or a misapplication of the law. Yes, and we believe we did, Your Honor, in that we pointed out the district court applied the product to another product, not to the patent claims, that the district court looked at the color and the shape of the product rather than looking at the words in the alleged trademark, that the district court looked at these photos and said, you used our photos that are not copyrighted. There's no suggestion or evidence that the photos are copyrighted. The Supreme Court has said they have to be patented or copyrighted or trademarked to fall into unfair competition. So the district court applied the wrong legal criteria in all instances by just looking at the product and saying you used their photos. As you saw here, these were photos of dogs. They don't even show the product. There's no suggestion of the product in a photo of a dog. There's other photos of tents that don't show the product. I think you've more than used your rebuttal, so we're going to take the case under submission. Thank you, Your Honor.